Kaspar American State Bank, Appellee, v. Oul Homestead Association et al., Appellants.

Gen. No. 40,600.

O'CONNOR, J., dissenting.

Opinion filed October 3, 1939.

LEON A. SEMERAK, of Chicago, for appellants.

ABRAMS, SHERMAN & LEWIS, of Chicago, for appellee; IRVING S. ABRAMS and MORRIS J. GAHR, both of Chicago, of counsel.

MR. JUSTICE McSURELY delivered the opinion of the court.

Judgment by confession was entered against defendants for $4,372.34; they subsequently filed a petition asking that the judgment be vacated and set aside; plaintiff was given leave to file a counter-affidavit; after hearing, defendants' motion was overruled and they appeal.

The first question is whether the note, with its power to confess judgment, authorized a personal judgment against the individuals named as defendants. The note is in the following form:

"Chicago, Ill. June 10, 1932.

"Two months after date, for value received, the undersigned jointly and severally promise to pay to the order of the Kaspar American State Bank Four Thousand ($4,000.00) Dollars. . . .

"Said Bank or the legal holder hereof is hereby authorized . . . to apply to the payment of any liabilities . . . of the undersigned jointly and severally, to said bank, or to the legal holder hereof, . . . all property, . . . of the undersigned. . . .

"And to secure the payment of said sum and interest, authority is given irrevocably to any attorney of any Court of Record, to appear for the undersigned jointly and severally in said Court, in term time or in vacation in any state or Territory of the United States, at any time hereafter and confess a judgment without process, in favor of the holder of this note for such amount as may appear to be unpaid or owing thereon, together with costs and reasonable attorney's fees. . . .

> Oul Homestead Association
> Albert Hornik, Pres.
> James L. Preisler, Sec'y
> James Bican, treas."

Defendants Hornik, Preisler and Bican say they signed the note in a representative capacity and that under the Negotiable Instrument Law [Ill. Rev. Stat., ch. 98,

par. 40, p. 2131; Jones Ill. Stats. Ann. 89.040] they are not personally liable, citing sec. 20 of that act, which reads in part as follows: ''Where the instrument contains, or a person adds to his signature, words indicating that he signs for or on behalf of the principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized . . .'' Defendants cite cases construing this statute to mean that where persons sign their names with their official titles they are signing for the purpose of attesting the signature of the corporation, and the instrument constitutes the obligation of the corporation alone. *Tampa Investment & Securities Co. v. Taylor,* 272 Ill. App. 541; *Scanlan v. Keith,* 102 Ill. 634; *Thompson v. Hasselman,* 131 Ill. App. 257, and other similar cases. To this plaintiff replies that in none of the cases cited by defendants do the words ''jointly and severally'' appear in the note, and that these words in the instant case impose an individual liability upon the signers. They appear three times in the note. Webster's Dictionary defines the word ''jointly'' to mean ''to become liable to a joint obligation,'' and the word ''severally'' to mean ''individually.''

In 8 Corpus Juris, page 166, sec. 277, the author discusses the use of the words ''jointly and severally'' in the body of an instrument and says they are held to be decisive of the meaning of the instrument and to import individual liability. Many English cases are cited in support. In *Healy v. Story,* 3 Exch. (Eng.) 3, the court in discussing the meaning of the words ''jointly and severally'' said, ''The plain grammatical meaning of the words is, 'we jointly promise, and we severally promise'; that is to say, we *personally* promise. That is clearly the true meaning of the words.'' In *Bradlee v. Boston Glass Manufactory,* 16 Pick. (Mass.) 347, 351, where the note read, ''. . . we, the subscribers, jointly and severally, promise to pay . . .'' it was held that these words were decisive, and

that the word "severally" bound each of the signers. These words were given the same effect in *Savage v. Rix,* 9 N. H. 263, 270.

Defendants rested their case upon the language of the note itself and argue that the phrase "the undersigned jointly and severally promise" is overbalanced by the form of the signatures and should be rejected as surplusage. Defendants concede that they find no case supporting this proposition. All the cases which pass upon the effect of these words hold that they import a personal liability upon the parties who sign the note, and no convincing reasons are presented which persuade us to hold otherwise.

Defendants' argument is based upon the assumption that the parties did not mean what they repeatedly said in the body of the note, and that all words, however definite, importing individual liability must be disregarded if after the names of the signers appear words indicating their official positions. This cannot be. The entire note must be considered. *Farmers Exchange Bank of Elvaston v. Sollars,* 353 Ill. 224.

In their petition to vacate the judgment defendants assert that the Oul Homestead Association, defendant, was in liquidation on January 17, 1936, under ch. 32, par. 246, § 34, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 14.36] and that having filed the requisite resolutions on January 17, 1936, and the liquidators having been appointed, no judgment could subsequently be confessed against it. Nowhere in the petition to vacate the judgment is it alleged that the Oul Homestead Association has complied with the statute by giving notice to plaintiff or to other creditors to file claims. Moreover, we find nothing in the statute which prohibits a claimant from reducing his claim to judgment. In fact there is language in the statute implying the contrary. The Oul Homestead Association was a mutual building loan and homestead association, and under the Liquidation Act the liquidators must report

to the auditor of public accounts semiannually or oftener, and their term of office expires at the end of one year. There is in defendants' petition to vacate the judgment no allegation that the liquidators have done any of the things required by the statute. There is only the bare allegation that the liquidators were appointed in January, 1936; apparently they have done nothing since. The judgment in question was entered June 13, 1938.

We hold that the note in question binds the Oul Homestead Association; that the abbreviations, "Pres.," "Sec'y" and "Treas." written after the names of the individual signers are merely *descriptio personae,* and that they are personally liable.

The judgment is affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE MATCHETT concurring: I concur on the ground that the affidavit to open up the judgment was not sufficient under Supreme Court Rule 26. Smith-Hurd Anno. Stats., ch. 110, par. 259.26, page 562.

MR. JUSTICE O'CONNOR dissenting in part: The note which is the basis of the suit is dated June 10, 1932, and is for $4,000, payable two months after date to the order of plaintiff bank. A number of payments are indorsed on the note, so that, according to plaintiff's computation as set forth in its complaint, there was $2,858.12 of principal due on the note and $1,227.45 interest. The instant suit was brought June 11, 1938, and judgment by confession for $4,372.34 was entered 2 days later, June 13, for principal, interest and attorneys' fees. The suit was brought and judgment entered against Oul Homestead Association, a corporation, Albert Hornick, James L. Preisler and James Bican. Defendants, pursuant to notice given counsel for plaintiff on July 13, filed their petition to vacate the judgment. July 15th an order was entered reciting

that on motion of counsel for defendants to vacate the judgment it was ordered "by agreement of counsel for plaintiff and defendants, that the judgment against Albert Hornick, James L. Preisler and James Bican is hereby vacated and set aside and declared null and void." And it was further ordered that the motion of the other defendant, Oul Homestead Association, a corporation, be set for hearing at a later date and leave given plaintiff to file counter-affidavits within 15 days. July 20th counsel for plaintiff served notice on defendants' counsel that they would move to vacate the order of July 15th by which the judgment against the three named individual defendants had been vacated and set aside, and that plaintiff's counsel would further move "to file a counter-affidavit against the entire petition filed herein by attorney for defendants." July 21st an order was entered vacating the order of July 15th and giving plaintiff leave to file a counter-affidavit and the matter was continued to the contested motion calendar. July 26th plaintiff's counter-affidavit was filed in which it is set up that the note upon which judgment was confessed "is not the obligation of the Oul Homestead Association solely, but also the obligation of Albert Hornik, James L. Preisler and James Bican." The counter-affidavit further set up that plaintiff was never notified that the Oul Homestead Association "had filed a resolution for liquidation with the Auditor of Public Accounts of the State of Illinois, and denied that plaintiff had any knowledge that Hornik, Preisler and Bican were appointed a liquidating committee on the 17th of January, 1936, as alleged in defendants' petition to vacate the judgment." There are further averments and references to this liquidation proceeding which I think unnecessary to refer to here.

Defendants in their verified petition (to vacate the judgment, which was filed July 15, 1938, as above stated) averred among other things that the note in

suit was the obligation of the Oul Homestead Associa-
tion, a corporation, and was executed by the three
individual defendants as officers of the corporation
and not as individuals.

What is now known as the Uniform Negotiable In-
struments Law went into effect July 1, 1907. (Ch. 98,
Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 89.040].)
Section 20 of the act provides: "Where the instru-
ment contains, or a person adds to his signature, words
indicating that he signs for or on behalf of a principal,
or in a representative capacity, he is not liable on the
instrument if he was duly authorized; but the mere
addition of words describing him as an agent or as
filling a representative character without disclosing his
principal, does not exempt him from personal lia-
bility."

Under the provisions of this section I think it is
clear that none of the defendants, Albert Hornik,
James L. Preisler or James Bican is personally liable.
The note is signed: "Oul Homestead Association,
Albert Hornik, Pres., James L. Preisler, Sec'y, James
Bican, treas." In my opinion it is clear that the note
is the obligation solely of the corporation and was
signed by the three individual defendants as president,
secretary and treasurer of the corporation. The note
comes specifically within the provisions of section 20,
and indicates that the three individuals signed "for or
on behalf of the principal . . . in a representative
capacity" and therefore they are "not liable on the
instrument," if they were authorized to execute the
note. In the instant case there is no contention but
that they were so authorized. And this conclusion is
not altered by the fact that the body of the note says,
"the undersigned jointly and severally promise to
pay" because the entire note must be considered. We
have examined the original note and it is a printed
form prepared and used by plaintiff bank.

In *Tampa Investment & Securities Co. v. Taylor*, 272 Ill. App. 541, in considering the question whether individuals who signed "as trustees" were personally liable, we said (p. 549): "Section 20 [above quoted] changed the previous rule that a name followed by a designation as to some relationship to another would be considered only *descriptio personae* and the maker therefore personally liable. Professor Brannan says (Brannan's Negotiable Instruments Law, 4th ed., p. 164):

" 'The plain language of this section indicates that it was the intention of the draftsman and the commissioners to clear up the unnecessary and unpardonable confusion caused by the failure of some of the courts to exercise a little common sense and to recognize mercantile usage. Much of the difficulty found in this subject is purely manufactured and would not trouble a business man for a moment.' " It was there held the individuals who signed the notes as trustees were not personally liable.

As sustaining the position I have reached in the instant case, compare *Mathis v. Liberty Straw Spreader Co.*, 238 Ill. App. 467; *Decowski v. Grabarski*, 181 Ill. App. 279; *Reed v. Fleming*, 209 Ill. 390; *Cannon v. Miller Rubber Products Co.*, 128 Ohio St. 72; *Jump v. Sparling*, 218 Mass. 324; *Consumers' Twine & Machinery Co. v. Mt. Pleasant Thermo Tank Co.*, 196 Iowa 64; *Myers v. Chesley*, 190 Mo. App. 371; *Second Nat. Bank of Akron, Ohio v. Midland Steel Co.*, 155 Ind. 581; Daniels on Negotiable Instruments, sec. 461, p. 533, vol. 1, 7th ed.